IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| CHARLES CLEMENS | : | No. 12-268 |

## MEMORANDUM

PRATTER, J.                                                                                                                             OCTOBER 14th, 2022

Charles Clemens seeks relief under 18 U.S.C. § 3582(c)(1)(A)(i), claiming that his medical condition is an "extraordinary and compelling" reason warranting compassionate release. However, Mr. Clemens failed to exhaust his administrative remedies before filing his *pro se* motion. Therefore, the Court denies his motion.

### BACKGROUND

Charles Clemens committed a string of robberies in Philadelphia in February 2012 with Marcus Robinson. On February 7, Mr. Clemens robbed a hotel in Philadelphia, telling the receptionist that he had a gun while he demanded money. The receptionist gave Mr. Clemens approximately $80.00. Mr. Clemens then robbed a pet supply store in Philadelphia on February 11 and again on February 15. During the first robbery, Mr. Clemens demanded money from store employees and pulled his jacket back, revealing what appeared to be the butt of a gun. Mr. Clemens threatened to shoot the employees if they did not comply with his demands. The employees gave Mr. Clemens $320. During the second robbery of the pet store, Mr. Clemens remained outside while Mr. Robinson robbed the store because Mr. Clemens had robbed the same store four days earlier. Mr. Robinson similarly demanded money and gave the employees the impression that he had a gun. The employees gave Mr. Robinson $342. On February 19, Mr. Clemens robbed another hotel in Philadelphia. He reached into his coat as if he were reaching for a gun and asked the

1

receptionist "if he was willing to die for the money." Gov.'s Resp. to Def.'s Mot. to Reduce Sentence, Doc. No. 71, at 2. The receptionist gave Mr. Clemens $151.

Mr. Clemens was charged by indictment with robbery which interferes with interstate commerce, in violation of 18 U.S.C. § 1951(a), conspiracy to commit robbery which interferes with interstate commerce, in violation of 18 U.S.C. § 1951(a), and robbery which interferes with interstate commerce and aiding and abetting, in violation of 18 U.S.C. §§ 1951(a) and 2. He confessed to committing all of the robberies and pled guilty to these charges on November 14, 2012. Mr. Clemens earned a sentence of 180 months' imprisonment with a three-year period of supervised release and is serving his sentence at FCI Hazelton with an earliest possible release date of June 15, 2025. To date, he has a total time served of approximately 136 months.

Mr. Clemens was 48 years old at the time of these robberies and, at sentencing, presented with Type I diabetes, hypertension, and hepatitis C. During his imprisonment, Mr. Clemens claims that his physical condition has deteriorated, and he now suffers from severe pain in his lower back. He is no longer able to walk and is confined to a wheelchair. Mr. Clemens argues that his worsening pain and confinement to a wheelchair warrant his release from FCI Hazelton to allow him to obtain proper medical treatment.

## LEGAL STANDARD

For the most part, courts "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Before asking a court to modify a sentence, a prisoner must first have "fully exhausted" his administrative remedies within the prison before applying to a court. 18 U.S.C. § 3582(c)(1)(A). Assuming a prisoner has met that threshold requirement, a court may, in limited circumstances, reduce a sentence for "extraordinary and compelling reasons." § 3582(c)(1)(A)(i). To count as extraordinary, the reason must be "[b]eyond what is usual, customary, regular, or common." *Extraordinary* (def. 1), *Black's Law Dictionary* (11th ed. 2019).

To be compelling, the reason must be "irresistible," such that the court is "oblige[d]" or "force[d]" to reduce the sentence. *Compelling* (def. b.), *Oxford English Dictionary* (2d ed. 1989); *Compel* (def. 1), *id.* Examples of potential "extraordinary and compelling" reasons include terminal medical conditions, complications arising from old age, or difficult family circumstances. U.S.S.G. § 1B1.13 app. n.1.[1] Once the prisoner has shown an extraordinary and compelling reason to warrant a sentence reduction, the Court must then consider the sentencing factors, set out in 18 U.S.C. § 3553(a), to decide if the sentence *should* be reduced, and by how much. 18 U.S.C. § 3582(c)(1)(A).

## DISCUSSION

### I. Mr. Clemens Has Not Properly Exhausted His Administrative Remedies

At the outset, the Court must deny Mr. Clemens's motion for failure to comply with the exhaustion requirement. That is because the Third Circuit Court of Appeals has required "strict compliance" with the exhaustion requirement in § 3582(c)(1)(A). *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Whether or not this rule is jurisdictional, as some courts have found, or a claim-processing rule, as others have found, it remains a threshold requirement of "critical[ ] importance."[2] *Id.*; *see United States v. Cruz*, 455 F. Supp. 3d 154, 157 (M.D. Pa. 2020) ("[S]ince [the defendant] has not yet presented his request for compassionate release to the BOP, it must be dismissed for lack of jurisdiction."); *United States v. Greenlove*, 469 F. Supp. 3d 341, 349 (M.D.

---

[1] On its face, U.S.S.G. § 1B1.13 governs a "motion of the Director of the Bureau of Prisons" for compassionate release. Thus, this "policy statement is not binding on prisoner-initiated motions." *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021). Still, it is highly persuasive authority that "sheds light on the meaning of extraordinary and compelling reasons." *Id.*

[2] In a recent unpublished opinion, however, the Court of Appeals for the Third Circuit may have modified this position, permitting a motion for compassionate release to be considered after the Government waived the exhaustion requirement. *See United States v. Canlas*, No. 22-1117, 2022 WL 2447108, at *1 n.1 (3d Cir. July 6, 2022) (per curiam). Still, unpublished opinions are not binding precedent, whereas published opinions are binding on this Court. *See, e.g.*, *United States v. James*, 928 F.3d 247, 254 n.5 (3d Cir. 2019) (explaining that two unpublished opinions of the Third Circuit do not have "any precedential effect").

Pa. 2020) ("[T]he court cannot waive Section 3582(c)(1)(A)'s exhaustion requirement because it is jurisdictional."). *But see, e.g.*, *United States v. Texeira-Nieves*, 23 F.4th 48, 53 (1st Cir. 2022) (describing the 30-day exhaustion requirement as a mandatory "non-jurisdictional claim-processing rule"); *United States v. Saladino*, 7 F.4th 120, 121 (2d Cir. 2021) (per curiam) ("[Section] 3582(c)(1)(A)'s exhaustion requirement is a claim-processing rule that may be waived or forfeited by the government.").

To sufficiently exhaust administrative remedies, a defendant must make a request to the warden of his facility seeking compassionate release and then allow the Bureau of Prisons 30 days to respond to the request. *See Raia*, 954 F.3d at 597. If the defendant files a motion for compassionate release before those 30 days expire, the motion for compassionate release must be denied for failing to exhaust administrative remedies. *See id.* The failure to exhaust administrative remedies "presents a glaring roadblock foreclosing compassionate release." *Id.*

On July 13, 2022, Mr. Clemens sent a request to the warden seeking compassionate release.[3] On August 2, 2022, Mr. Clemens filed his *pro se* motion for compassionate release in this Court. Mr. Clemens failed to allow the Bureau of Prisons 30 days to respond to his request before filing his motion for compassionate release. *Raia*, 954 F.3d at 597. The Court must therefore deny Mr. Clemens's motion because he failed to exhaust his administrative remedies. Because the motion is being denied for failing to exhaust administrative remedies, the Court will *consider* the merits of the motion in the hopes that this may provide some clarity to Mr. Clemens. It will not, however, *resolve* Mr. Clemens's motion on the merits. Moving forward, the Court reminds Mr. Clemens that he is *required* to properly exhaust any motion for compassionate release before

---

[3] Mr. Clemens's July 13, 2022 request was an e-mail addressed to FCI Health Services. Def.'s Mot. to Reduce Sentence, Doc. No. 69, at 8. The Government recognized this communication as a request to the warden for compassionate release. Gov.'s Resp. to Def.'s Mot. to Reduce Sentence, Doc. No. 71, at 4 ("On July 13, 2022, the defendant filed a second request with the warden for compassionate release.").

bringing it in front of a court, a requirement the Third Circuit Court of Appeals has explained must be followed with "strict compliance." *Raia*, 954 F.3d at 597.

## II. Mr. Clemens Has Not Presented Any Extraordinary And Compelling Reasons For His Release

To demonstrate an "extraordinary and compelling" reason sufficient to qualify for compassionate release, a prisoner must show that he suffers from "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 app. n.1(A)(ii). Mr. Clemens claims that his severe lumbar spine pain and numbness, his inability to walk, and his confinement to a wheelchair are "extraordinary and compelling" reasons to grant him compassionate release. He alleges that he is unable to get an appointment with a doctor outside of FCI Hazelton who will evaluate him to determine whether his condition is permanent. Further, Mr. Clemens argues that FCI Hazelton staff members claim that he is faking his injury. Mr. Clemens seeks compassionate release to obtain medical care and to get an MRI scan, which he asserts FCI Hazelton will not provide him.

The Government contends that Mr. Clemens's medical condition is not an "extraordinary and compelling" reason to grant him compassionate release because it does not substantially diminish his ability to provide self-care at FCI Hazelton. U.S.S.G. § 1B1.13 app. n.1(A)(ii). According to the Government, FCI Hazelton has paid extensive attention to Mr. Clemens's condition and has treated him with medication including steroids, provided him with a wheelchair, and scheduled consultations with specialists.[4] Mr. Clemens's medical records indicate he may

---

[4] In its response to Mr. Clemens's Request for Administrative Remedy dated May 31, 2022, FCI Hazelton's Acting Warden informed Mr. Clemens that he has "been submitted to have an MRI of [his] lower back completed, and [he is] currently in the process of being scheduled." Def.'s Mot. to Reduce Sentence, Doc. No. 69, at 9.

5

suffer from "peripheral neuropathy," a condition characterized by a feeling of numbness that does not result in paralysis.[5] Peripheral neuropathy is a condition commonly caused by uncontrolled diabetes, and the Government notes that Mr. Clemens has a history of non-compliance with medical treatment, including repeatedly refusing his insulin doses.

If the Court construes the present motion as a claim that his medical condition itself is an extraordinary and compelling reason for his release, Mr. Clemens fails to meet his burden of showing that extraordinary and compelling reasons exist. *See United States v. Adeyemi*, 470 F. Supp. 3d 489, 512 (E.D. Pa. 2020). Mr. Clemens's condition, while serious, does not appear to substantially diminish his ability to provide self-care at FCI Hazelton. The medical staff at FCI Hazelton have attempted to help Mr. Clemens manage his diabetes and have attended to his current medical condition by providing him a wheelchair and scheduling appointments with medical specialists. Moreover, Mr. Clemens has repeatedly refused treatment for his various other medical conditions, including diabetes. Thus, even if he had administratively exhausted his motion, Mr. Clemens would still fail to meet his burden of establishing that his medical condition is an extraordinary and compelling reason warranting compassionate release.

If, on the other hand, the Court construes the motion as a claim that Mr. Clemens is being held in unconstitutional conditions of confinement, a motion for compassionate release is not the proper vehicle to bring such a claim. *See Leamer v. Fauver*, 288 F.3d 532, 543 (3d Cir. 2002) (explaining that a challenge to a condition of confinement "is a challenge properly brought under § 1983"); *Doe v. Pa. Bd. of Prob. & Parole*, 513 F.3d 95, 99 n.3 (3d Cir. 2008) ("Challenges to conditions of confinement fall under § 1983."). Thus, a motion for compassionate release, even

---

[5] Peripheral neuropathy is a condition commonly caused by diabetes, resulting from damage to the nerves located outside the brain and the spinal cord. It typically causes weakness, numbness, and pain. *Peripheral Neuropathy*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/peripheral-neuropathy/symptoms-causes/syc-20352061 (last accessed Oct. 13, 2022).

6

one that has been administratively exhausted, is an improper vehicle to raise such a claim and does not constitute an "extraordinary and compelling" reason for his release.

### III. The Sentencing Factors Also Counsel Strongly Against Mr. Clemens's Release

Even if Mr. Clemens had demonstrated an extraordinary and compelling reason for his early release in an administratively exhausted motion, the sentencing factors all counsel strongly against Mr. Clemens's early release. Mr. Clemens's sentence of 180 months reflects the seriousness of his offense. 18 U.S.C. § 3553(a)(2)(A). Mr. Clemens pled guilty to committing a string of robberies, during which he implied that he would shoot the victims with a firearm if they did not comply with his demands for cash. Furthermore, Mr. Clemens has a lengthy criminal history, with convictions for robbery and assault spanning his entire adult life. Thus, his imprisonment protects the public from further such conduct that might endanger others. § 3553(a)(2)(C). Additionally, Mr. Clemens's continued imprisonment in accordance with his sentence specifically and generally deters against future criminal conduct within the community. § 3553(a)(2)(B).

### CONCLUSION

For the foregoing reasons, the Court denies Mr. Clemens's motion for compassionate release. An appropriate order follows.

BY THE COURT:

*[signature]*

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE